IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMANDA WHITMER,                )<br>                                                    )<br>            Plaintiff,             )<br>                                                    )<br>v.                                                )<br>                                                    )<br>MICHAEL J. ASTRUE,             )<br>Commissioner of Social Security, )<br>                                                    )<br>            Defendant.           )<br>_____ ) | CIVIL ACTION<br><br>No. 11-1390-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's step three analysis, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.   Background**

Plaintiff applied for both SSD and SSI on April 9, 2009, alleging disability beginning November 2, 2007. (R. 11, 156-70). The applications were denied initially

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 11, 70-73, 94-95). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on March 24, 2011. (R. 11, 27-47). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 11, 27-47). ALJ Dayton issued his decision on April 22, 2011 finding alternatively at step four that Plaintiff is able to perform her past relevant work as a data entry clerk, and at step five that there are a significant number of other jobs in the economy that Plaintiff is able to perform. (R. 11-21). Therefore, he concluded that Plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 21). Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a Representative Brief. (R. 7, 315-18). The Council issued an order making the Representative Brief a part of the administrative record, but found that the brief did not provide a basis for changing the ALJ's decision, found no reason under the rules of the Social Security Administration (SSA) to review the decision, and denied the request for review. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

**II.     Legal Standard**

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred at step three of the sequential evaluation process in finding that Plaintiff's multiple sclerosis (MS) does not meet or equal the severity of Listing 11.09C, failed to base his RFC assessment on substantial record evidence, and erred in evaluating the credibility of Plaintiff's allegations of symptoms.  The Commissioner argues that substantial record evidence supports both the ALJ's finding that Plaintiff's condition does not meet or equal the severity of Listing 11.09C, and the ALJ's RFC assessment, including his evaluation of the credibility of Plaintiff's allegations and his evaluation of the medical opinions.

The court finds that remand is necessary because the record evidence does not support the ALJ's step three finding that Plaintiff's condition does not meet or equal the severity of Listing 11.09C.  Because of the step three error, it will be necessary for the Commissioner on remand to reassess Plaintiff's RFC including both reevaluating the

credibility of Plaintiff's allegations of symptoms resulting from her impairments, and reevaluating the medical opinions.  Therefore, Plaintiff may make her arguments regarding error in those determinations on remand, and the court will not attempt to provide an advisory opinion with respect thereto.

## III.     Step Three Determination

Plaintiff notes that Listing 11.09C is met if a claimant has multiple sclerosis with "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process."  (Pl. Br. 7) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.09C).  She points out that she was diagnosed with MS on November 12, 2007, that she testified that she gets fatigued easily and becomes exhausted in her whole body, and that treatment notes from Dr. Alseoudi, her neurologist, reflect such fatigue.  (Pl. Br. 7-8). Finally, Plaintiff points to a "Medical statement regarding multiple sclerosis for Social Security disability claims" completed by Dr. Alseoudi and included in the administrative record, in which Dr. Alseoudi opined that Plaintiff has "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination."  (Pl. Br. 9) (citing R. 535).

Plaintiff argues that this evidence demonstrates that her condition meets or equals listing 11.09C, but that in deciding otherwise, the ALJ did not point to any record evidence demonstrating that the Listing is not met, and said nothing with regard to Dr.

6

Alseoudi's opinion concerning reproducible fatigue of motor function, but merely stated the conclusory finding that Plaintiff does not have "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." (Pl. Br. 9-10).  The Commissioner points out, on the other hand, that the criteria defining a Listed impairment have been explicitly set at a higher level of severity than the statutory standard because if a listing level is met no further inquiry is necessary.  (Comm'r Br. 4) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990)).  He quotes the same criteria to meet Listing 11.09C as quoted in Plaintiff's brief, and points to the ALJ's finding that those criteria are not met in this case.  Id. at 5 (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.09C; and R. 15).  He argues that Dr. Alseoudi's treatment notes support the ALJ's finding, noting that on March 30, 2009 Dr. Alseoudi reported to Plaintiff's primary care physician that Plaintiff was doing better and she had no new neurological symptoms, and that the examination report provided to the primary care physician does not reflect any "substantial muscle weakness" that was "demonstrated on physical examination" as required by the Listing.  (Comm'r Br. 5-6) (citing R. 426, 427).  He argues that this is typical of Dr. Alseoudi's findings throughout the period at issue.  Id. at 6.

The criteria of Listing 11.09C are not readily discernible on their face, and the record evidence does not obviously demonstrate to a lay observer such as this court that those criteria are not met.  Therefore, the court finds that the ALJ erred in failing to

explain the specific criterion of Listing 11.09C that is not met in this case, and in failing to explain how the record evidence demonstrates that criterion is not met.

### A.     **Standard for Step Three Determination**

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Zebley, 493 U.S. at 530 (emphasis in Zebley)).  "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the Listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).

The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 11.09 provides for evaluating Multiple Sclerosis:

11.09 Multiple sclerosis. With:

A. Disorganization of motor function as described in 11.04B; or

B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or

C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.09.

### B.   The ALJ's Step Three Finding Regarding Listing 11.09

The ALJ stated why he found Listing 11.09 is not met or medically equaled:

The claimant's condition does not meet Listing 11.09, Multiple sclerosis because she does not have disorganization of motor function, [or] visual or mental impairment as described under sections related to senses or mental impairment. She does not have significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

(R. 15).

### C.     Analysis

Comparison of the ALJ's step three finding with Listing 11.09 reveals that he considered the Listing and found that the criteria of paragraph A (disorganization of motor function), of paragraph B (certain visual or mental impairments), and of paragraph C (significant reproducible fatigue) are not demonstrated in the record evidence. However, nowhere does the ALJ explain what each of the Listing criteria actually require so that the court might carry out judicial review and determine whether substantial record evidence supports the step three finding. The regulations define "disorganization of motor function" so that the court might presumably determine from the record evidence whether that definition is met or equaled. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 11.00C, E. Moreover, the Listing impairments referred to in paragraph B presumably have identifiable criteria to which the court might refer in order to determine if substantial record evidence supports an ALJ's findings with respect to that paragraph.

Paragraph C provides that in order to meet Listing 11.09C a claimant with MS must have "Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." The court is able to identify no less than ten descriptors or phrases in this sentence describing the fatigue which is required in order to meet or equal Listing 11.09C. Nevertheless, the amount, kind, onset, persistence, location, and presentation of the fatigue, and the clarity of the clinical and

laboratory diagnostic techniques necessary to evaluate that fatigue are not evident to a lay observer such as this court merely by reading the Listing.  The regulations provide little to clarify the situation.  They explain that "the criteria in 11.09C [are] dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued.  The evaluation of the magnitude of the impairment must consider the degree of exercise and the severity of the resulting muscle weakness."  20 C.F.R., Pt. 404, Subpt. P, App.1, § 11.00E.

The ALJ specifically found that the criteria of Listing 11.09C are not met, but he did not point to record evidence demonstrating that fact.  And, he did not mention the three-step procedure suggested in the regulations or explain how the record evidence fits within that procedure.  Moreover, as Plaintiff asserts, her treating neurologist specifically opined that Plaintiff has "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination," part of the precise criteria mentioned in the Listing, and which the ALJ found were not met or equaled.  (R. 535).  Although the ALJ accorded Dr. Alseoudi's MS Questionnaire "no weight," he did so because the opinion stated Plaintiff could work only four hours a day which was inconsistent with Plaintiff's report that she performed substantial activities each day <u>after</u> she worked four hours and with Dr. Alseoudi's other opinion offered the same day which stated Plaintiff could work eight hours a day.  (R. 18).  But, the ALJ did not even mention Dr. Alseoudi's opinion regarding significant

11

reproducible fatigue, and did not recognize that the opinion was directly contrary to his step three finding and was essentially an opinion that Plaintiff's MS meets or equals Listing 11.09C.

In these circumstances, the court is without any quantifiable standard to determine whether Listing 11.09C is met or whether the ALJ's finding to the contrary is supported by substantial record evidence. Applying the three-step procedure suggested in § 11.00E of the regulations, the court finds that Dr. Alseoudi documented a diagnosis of multiple sclerosis, obtained a description of fatigue from Plaintiff which he (a neurologist) considered to be characteristic of MS, and obtained evidence that Plaintiff's system has actually become fatigued. (R. 539-90). Therefore, on its face the record evidence does not support the ALJ's finding that Listing 11.09C is not met. Moreover, contrary to both the ALJ's finding and the Commissioner's argument that Plaintiff has not developed any new neurological symptoms (R. 17), (Comm'r Br. 6), Dr. Alseoudi's treatment records dated February 9, 2009 reveal that Plaintiff developed "new dizziness and balance problems" and was leaning to the left when walking, and this condition continued through March 30, 2009. (R. 563-70). Although the evidence does not support the ALJ's step three finding, the court is unable to determine with any degree of certainty whether the criteria for Listing 11.09C are, in fact, met or equaled. Therefore, remand is necessary for a proper evaluation of Listing 11.9C, taking into account Dr. Alseoudi's opinion; and for an explanation of whether the Listing is met, citing to record evidence which supports the finding.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 9th day of November 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**